UNITED STATES, Appellee

v.

Shawn T. GOLDWIRE, Airman Basic
U.S. Air Force, Appellant

No. 00-0349/AF

Crim. App. No. 32840

United States Court of Appeals for the Armed Forces

Argued November 9, 2000

Decided June 14, 2001

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE and EFFRON, JJ., joined. SULLIVAN and BAKER, JJ., each filed an opinion concurring in the result.

<u>Counsel</u>

For Appellant: Captain Patience E. Schermer (argued); Lieutenant Colonel James R. Wise and Major Stephen P. Kelly (on brief); Lieutentant Colonel Timothy W. Murphy.

For Appellee: Captain Suzanne Sumner (argued); Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, Major Harold M. Vaught, and Major Mitchel Neurock (on brief); Major Lance B. Sigmon and Captain Christa S. Cothrel.

Military Judge: J. Jeremiah Mahoney

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.**

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by officer members at a general court-martial of rape and wrongfully possessing alcohol while under 21 years of age, in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 USC §§ 920 and 934. He was sentenced to a bad-conduct discharge and 42 months' confinement. The convening authority reduced the period of confinement to 24 months, but otherwise approved the sentence. The court below affirmed. 52 MJ 731 (1999). We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY PERMITTING MASTER SERGEANT GREEN TO TESTIFY AS TO HIS OPINION AS TO APPELLANT'S CHARACTER FOR TRUTHFULNESS.

For the reasons stated herein, we hold that the military judge did not err by permitting Master Sergeant Green to testify as to appellant's character for truthfulness.

FACTS

On July 5, 1996, appellant and two of his friends, Airman B and Airman M, invited Airman K, the female victim of the rape, to attend a party at Airman B's off-base apartment the following day. Airman K had never spoken to appellant before that night. Nevertheless, she agreed to attend the party because she thought it would be fun.

The next morning, Airman K met appellant and his friends to accompany them to the party. Their plan was "to go to Airman

2

[B's] apartment and drink." On the way to the party, the group stopped at a liquor store where Airman K bought beer, a bottle of vodka, and orange juice. The party started that morning and continued throughout the day. At one point, Airman K went to Taco Bell for lunch with appellant. On the way back, they stopped at a second liquor store and purchased more alcoholic beverages for the party. The in-party activities consisted of drinking, listening to the radio, and playing cards and dominoes.

During the course of the day, appellant became very intoxicated, to the point of becoming ill. Airman K and Airman B found appellant lying on the bathroom floor and helped him into the bedroom. By evening, Airman B, Airman M, Airman K, and appellant remained at the apartment. Airman B and Airman K began to play a drinking game while Airman M watched. During the game, Airman K consumed orange juice and vodka. After the game, Airman K sat at one end of the couch with Airman M at the other end, and Airman B sat in a chair. The three airmen fell asleep. At that point, appellant was still in the bedroom.

Airman K testified that the next thing she remembered was waking up on the bed in the bedroom with appellant on top of her. She was naked from the waist down, and her shirt and bra were pushed above her breasts. She said appellant's legs were on top of hers, and his hands were at either side of her waist.

3

Airman K testified that she attempted to push appellant away when someone grabbed her wrists and pulled her arms back against the bed. She stated that she started fighting and screaming and telling appellant to stop, and that is when appellant started having sex with her. She remembered appellant having sex with her for about a minute while she was telling him to get off of her and let her go. Airman K also testified that she pushed appellant and he jumped off the bed. Airman K got off the bed and put on some pants that were on the floor. She testified that appellant tried to block her from leaving the room, but she hit him and got outside. She headed for the guard shack with appellant trying to get her to come back to the apartment. Someone passing the area stopped and gave Airman K a ride back to her squadron.

Airman K returned to her dormitory room at approximately 10:00 p.m. When her roommate opened the door, Airman K was holding her pants with one hand and crying hysterically. After describing what happened to her, Airman K told her roommate that she could not believe that appellant did that to her. Airman K was taken to the emergency room at the base hospital, where a test taken at 1:30 a.m. on July 7, 1996, showed her blood alcohol level to be .142.

Airman B testified for the Government under a grant of immunity. He testified that he woke up that evening with his

hand on Airman K's leg. He noticed that Airman M seemed to be "half awake." Airman B proceeded to touch Airman K's breasts under her clothing. Airman M did the same. Airman B then exposed Airman K's breasts by pushing her shirt up over her breasts. He then unbuttoned and unzipped Airman K's jeans. He and Airman M proceeded to remove Airman K's jeans and underwear. At that point, appellant came out of the bedroom and began to fondle Airman K's breasts, rub her legs, and kiss her neck. There was no initial response from Airman K, but she began to rub appellant's neck and back when he started to have intercourse with her. Airman B saw Airman K wake up and tell appellant to stop. Appellant did so. At that point, appellant picked up Airman K and took her into the bedroom. Shortly thereafter, Airman K left the apartment followed by appellant.

Appellant did not testify at trial. Special Agent Donald I. Phillips was called by the Government and testified that following a rights advisement, appellant gave an oral statement in December, approximately five months after the incident with Airman K. In the statement, appellant admitted having sexual intercourse with Airman K. Appellant also stated that prior to having sex with him, Airman K had not said anything, and her eyes were closed. However, he claimed there were a couple of times when his penis came out of Airman K's vagina and she reinserted it.

During cross-examination of Agent Phillips, defense counsel established that a number of facts contained in appellant's statement were consistent with a consensual act of intercourse: Airman K was not so intoxicated that she could not participate in foreplay; Airman K rubbed the back of appellant's neck prior to sexual intercourse; twice she asked appellant to stop and he did stop; and appellant told Agent Phillips that when they completed having sexual intercourse, they talked.

Later, the military judge, after a timely objection by trial defense counsel, permitted appellant's first sergeant, Master Sergeant (MSgt) Gary E. Green, to offer his opinion of appellant's character for truthfulness. MSgt Green testified as follows:

Q. Sergeant Green, in your duties as first sergeant have you had contacts with the accused?

A. Yes, I have.

Q. And, based on those contacts with the accused, have you been able to form an opinion as to his character for truthfulness?

A. Yes, I have.

Q. What is that opinion?

A. That he is not truthful.

After admitting the opinion character evidence from appellant's first sergeant, the military judge gave the following cautionary instruction to the members:

> Members of the court, with regard to the testimony you heard yesterday from Sergeant Green, Master Sergeant Green was permitted to express his opinion of the accused's character for truthfulness for your evaluation in considering the weight you'll accord the accused's out of court statements as related in the testimony of other witnesses. As defense counsel attempted to point out in cross-examination of Master Sergeant Green, and as I subsequently confirmed with Master Sergeant Green after you were excused for the day, his opinion was based solely on one instance where the accused lied to a detail supervisor about his whereabouts. So you should consider that fact in determining the weight you'll accord the opinion of Master Sergeant Green. In any event, you may not infer from his opinion or it's basis that the accused is a bad person and must therefore have committed the offenses here charged.

Appellant contends that when trial defense counsel cross-examined Agent Phillips about appellant's oral statement, appellant was merely exercising his rights under the rule of completeness. As such, this did not put appellant's credibility in issue, and admission of MSgt Green's opinion regarding appellant's character for truthfulness was improper. Appellant also asserts that his statement to the investigator should not have been admitted as hearsay, but rather, should have been admitted as an admission by a party-opponent under Mil.R.Evid. 801(d)(2)(A), Manual for Courts-Martial, United States (2000 ed.).[1] Consequently, his credibility was not subject to attack under Mil.R.Evid. 806. Moreover, he argues that the probative

---

[1] All Manual provisions are identical to the ones in effect at the time of appellant's trial.

value of MSgt Green's opinion was far outweighed by the danger of unfair prejudice to the appellant.

Appellant further argues that even if such character evidence was admissible, his first sergeant lacked an adequate foundation to offer an opinion as to appellant's character for truthfulness. He points out that this Court in United States v. Toro, 37 MJ 313, 317 (CMA 1993), concluded that "[t]o lay a proper foundation for opinion evidence, the proponent must show that the character witness personally knows the witness and is acquainted with the witness well enough to have had an opportunity to form an opinion of the witness' character for truthfulness." He argues that MSgt Green lacked such a foundation.

## DISCUSSION

We review the decision by the military judge to admit the first sergeant's opinion evidence under the abuse of discretion standard. United States v. Johnson, 46 MJ 8, 10 (1997).

This is a case where the defense counsel attempted to advocate his cause through the use of his client's out-of-court statement to an investigator. That statement contained both exculpatory and inculpatory facts. Trial defense counsel elicited appellant's exculpatory statements through his zealous cross-examination of a government witness, and in so doing, suggested to the factfinder that the exculpatory statements

8

deserved more weight than appellant's inculpatory statements.

Proper resolution of the granted issue requires us to discuss a

number of interlocking rules of evidence and theories, to

include Mil.R.Evid. 106, 304, 607, and 806, as well as the

common law rule of completeness.

### 1. Rule of Completeness

Mil.R.Evid. 106, the rule of completeness, which is taken

"without change" from the federal rule (Drafters' Analysis of

Mil.R.Evid. 106, Manual, supra at A22-4), provides:

> When a writing or recorded statement or part
> thereof is introduced by a party, an adverse
> party may require that party at that time to
> introduce any other part or any other writing
> or recorded statement which ought in fairness
> to be considered contemporaneously with it.

The rule of completeness is a rule that governs the scope of

evidence.  It particularizes the type of evidence (written and

oral), the relationship between when all or part of a written or

oral statement may be introduced, and the operation of

procedural rules.

Moreover, in Beech Aircraft Corp. v. Rainey, 488 U.S. 153,

172 (1988), the Court indicated that Fed.R.Evid. 106 "partially

codified" the common law completeness doctrine.  Under the

common law rule of completeness, "[t]he opponent, against whom a

part of an utterance has been put in, may in his turn complement

it by putting in the remainder, in order to secure for the

tribunal a complete understanding of the total tenor and effect of the utterance." Id. at 171, quoting 7 Wigmore, Evidence § 2113 at 653 (Chadbourn rev. 1978).

The rule of completeness must be examined in terms of the common law rule and the authority of the judge under Fed.R.Evid. 611(a). Under either the federal or military rules version, Rule 106 only applies to written or recorded statements. However, under the common-law version, and at the discretion of the judge under Rule 611(a), the rule is applicable to oral testimony as well. See, e.g., United States v. Alvarado, 882 F.2d 645, 650 n.5 (2d Cir. 1989).

Under Fed.R.Evid. 106 and its military counterpart, the opponent may demand that the proponent expand the scope of questioning and introduce the entire statement to avoid creating a misleading impression. If the defense in this case had required the prosecution to introduce the remainder of appellant's statement to Agent Phillips, that would not have prevented the application of Rule 806, as explained below.[2]

Here, the defense did not require the prosecution to introduce a part of the statement during its direct examination. Rather than invoking Rule 106, the defense applied the common law completeness doctrine and waited for their own stage of

---

[2] Fed.R.Evid. 806 and Mil.R.Evid. 806 are the same. See Drafters' Analysis of Mil.R.Evid. 806, Manual for Courts-Martial, United States (2000 ed.) at A22-57.

presentation of proof.  Since the prosecution had introduced part of the statement, the defense could introduce the remainder, since there was no question as to its relevance.

The defense argues that since they introduced the rest of the statement through their cross-examination of Agent Phillips, that precluded the Government from relying on Rule 806.  But had the entire statement been introduced by the prosecution, Rule 607[3] would not have precluded them, as the proponent of the evidence, from impeaching their own witness.  But as we indicated, the judge has discretion under Rule 611(a)[4] and Rule 403[5] to exclude the evidence when its introduction may be unfair to a party, a waste of time, or confusing to the jury.

Thus, Rule 106 permits the defense to interrupt the prosecution's presentation of the case as to written and recorded statements.  See, e.g., United States v. Branch, 91 F. 3d 699 (5th Cir. 1996)(some circuits have held that Rule 106 does not apply to testimony concerning oral conversations).

It must be recognized that some states have broadened their counterpart to Fed.R.Evid. 106 by covering all statements, whether or not written or recorded.  See Iowa R. Evid. 106; Oregon Evid. Code, Rule 106.  We need not decide this issue on the common law rule because Mil.R.Evid. 304(h)(2) provides:

---

[3] Mil.R.Evid. 607 and Fed.R.Evid. 607 are the same.  Id. at A22-46.
[4] Mil.R.Evid. 611(a) and Fed.R.Evid. 611(a) are the same.  Id. at A22-47.
[5] Mil.R.Evid. 403 and Fed.R.Evid. 403 are the same.  Id. at A22-34.

> If only part of an alleged admission or
> confession is introduced against the accused,
> the defense, by cross-examination or otherwise,
> may introduce the remaining portions of the
> statement.

The Drafters' Analysis of this rule states:

> Rule 304(h)(2) allows the defense to complete
> an incomplete statement regardless of whether
> the statement is oral or in writing.  As Rule
> 304(h)(2) does not by its terms deal only with
> oral statements, it provides the defense in this
> area with the option of using Rule 106 or 304(h)
> (2) to complete a written statement.

Manual, supra at A22-13.  Accordingly, under the Military Rules

of Evidence, appellant's entire statement was properly before

the factfinders.

### 2. Impeachment of Non-Testifying Declarant

Mil.R.Evid. 806 provides in part:

> When a hearsay statement, or a statement defined
> in Mil.R.Evid. 801(d)(2)(C), (D), or (E), has been
> admitted in evidence, the credibility of the declarant
> may be attacked, and if attacked may be supported,
> by any evidence which would be admissible for those
> purposes if [the] declarant had testified as a
> witness.

By its terms, Rule 806 applies to the introduction of "a hearsay

statement, or a statement defined in Mil.R.Evid. 801(d)(2), (C),

(D), or (E)."

The first part of the rule would encompass a "hearsay"

admission by appellant.  When considering adoption of Rule 806,

the Senate Judiciary Committee "considered it unnecessary to

include statements contained in rule 801(d)(2)(A) and (B) -- the

12

United States v. Goldwire, No. 00-0349/AF

statement by the party-opponent himself or the statement of which he has manifested his adoption -- because the credibility of the party opponent is always subject to an attack on his credibility [sic]." S.Rep. No. 93-1277 (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7069 n.28. This is not a case where the prosecution sought to introduce the accused's inconsistent statement under Mil.R.Evid. 801(d)(2)(A) or (B) for the purpose of impeaching the accused under Mil.R.Evid. 806. In these situations, the trial judge has the discretion under Rule 403 to balance equities and control the introduction of evidence. See United States v. Dent, 984 F.2d 1453, 1460 (7th Cir. 1993).

Although it was able to find no military cases that address this exact issue, the Court of Criminal Appeals resolved that it was not reasonable to conclude that attacks on the credibility of the speaker's statement are excluded merely because the statement is admitted as made by a party-opponent. 52 MJ at 733. In so doing, the lower court relied on the rationale of the Senate Judiciary Committee, as well as the holdings of two federal Circuit Courts that previously confronted the very same issue. Id.; United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995); United States v. Velasco, 953 F.2d 1467, 1473 (7th Cir. 1992). We agree with both the Court of Criminal Appeals and the First and Seventh Circuits. When the defense affirmatively introduces the accused's statement in response to the

13

prosecution's direct examination, the prosecution is not

prohibited from impeaching the declarant under Mil.R.Evid. 806.

### 3. Character Evidence

Responding to appellant's assertion that the first sergeant

lacked a sufficient basis to provide an opinion on appellant's

character for truthfulness, the court below found as follows:

> In reviewing the facts here, the evidence demonstrates that the first sergeant's opinion was based on his personal knowledge that the appellant lied to his supervisor, not speculation. The lie involved the appellant's military duties and was a distinct offense under the UCMJ. The appellant lied to his supervisor beforehand, in order to avoid duty. The lie occurred after the appellant was already under investigation for rape. Under these circumstances, we find the first sergeant was qualified to offer an opinion concerning the appellant's character for truthfulness.

52 MJ at 735.

Mil.R.Evid. 405(a) permits the introduction of both

reputation and opinion type evidence. See United States v.

Breeding, 44 MJ 345, 350 (1996). To introduce this evidence, it

must be shown that the witness was a member of the community

long enough to have become familiar with the accused's

reputation in the community, or that the witness knew the

accused long enough to have formed an opinion as to his

character. Id. Certainly, a first sergeant knew appellant long

enough to have formed an opinion as to appellant's truthfulness.

14

However, Mil.R.Evid. 405(a) and (b)[6] preclude the introduction of specific acts to establish a witness's credibility.

The unique nature of military society does not justify a finding that a single lie would constitute an adequate basis for opinion testimony regarding a witness's character for truthfulness. The standard is whether the circumstances -- including the circumstances surrounding a particular aspect of military life -- provide a sufficient basis to conclude that a single statement is sufficient to form an opinion as to credibility. The first sergeant was acquainted with appellant through his role as first sergeant and as an investigator and could form an opinion of appellant's character through that exposure. In this case, before the judge allowed the witness to testify in front of the members, he limited the testimony and excluded the details that were used to establish an adequate foundation.

MSgt Green testified out of the hearing of the members that he was appellant's first sergeant at the 338th Training Squadron, Keesler Air Force Base. He addressed appellant's involvement with underage drinking at his off-post apartment. He saw appellant numerous times, both before and after the date of the offense, and was personally involved with appellant on at least

---

[6] Mil.R.Evid. 405(a) and (b) are the same as Fed.R.Evid. 405(a) and (b). Id. at A22-35.

15

two occasions, including disciplinary actions against appellant. As the first sergeant, he investigated the incidents involving appellant.

We hold that the prosecution established an adequate foundation for the first sergeant's opinion as to appellant's untruthfulness, and that the judge correctly precluded specific instances of misconduct to be introduced to support that opinion.

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in the result):

Appellant was charged with the rape of Airman Christine K in the summer of 1996 at the off-base apartment of Airman B in Biloxi, Mississippi. The victim testified at this court-martial, but appellant did not. His version of what happened that night was contained in oral statements to police investigators, which were evidenced at trial and partially corroborated by the testimony of Airman B. Appellant challenges on appeal, as he did at trial, the military judge's decision to permit the prosecution to admit opinion testimony from Master Sergeant Green that he (appellant) had a poor character for truthfulness. (R. 303-04) The Government responds that, even though appellant was not a witness at this court-martial (see Mil. R. Evid. 607 and 608(a), Manual for Courts-Martial, United States (1995 ed.) (a witness may be impeached by opinion testimony on poor character for truthfulness)), the challenged impeachment testimony was admissible under Mil. R. Evid. 806.

The particular question before this Court is whether Master Sergeant Green's testimony concerning appellant's poor character for truthfulness was admissible under Mil. R. Evid. 806. It states:

**Rule 806. Attacking and supporting credibility of declarant**

> When a hearsay statement, or a statement defined in Mil. R. Evid. 801(d)(2)(C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if [the] declarant had testified as a witness.

Since no out-of-court statement by appellant's representative, agent or servant, or co-conspirator was admitted in this case under Mil. R. Evid. 801(d)(2)(C),(D), or (E), an obvious question remains. [1] Were "hearsay statement[s]" of appellant admitted in this case which would allow the admission of poor character opinion testimony to impeach appellant under Mil. R. Evid. 806? [2]

Turning to the record of trial, I note that the alleged victim testified she awoke in a bed in Airman B's bedroom, with appellant on top of her. (R. 206-07)  She testified that someone grabbed her wrists, and appellant proceeded to engage in sexual

---

[1]  Several Courts of Appeals have also held that Fed. R. Evid. 806 permits the impeachment of an accused whose out-of-court statement is introduced by the Government as admissions of a party-opponent under Fed. R. Evid. 801(d)(2)(A) or (B).  These statements are not technically hearsay, nor otherwise expressly permitted to be impeached under this rule.  See United States v. Shay, 57 F.3d 126, 131-32 (1st Cir. 1995); United States v. Valesco, 953 F.2d 1467, 1473 n.5 (7th Cir. 1992).  We need not decide this question today.

[2]  This rule has been severely criticized because, on its face, it allows the prosecution to place an accused's credibility in issue by introducing hearsay statements favoring an accused.  See Margaret M. Cordray, Evidence Rule 806 and the Problem of Impeaching the Nontestifying Declarant, 56 Ohio St. L.J. 495, 501-02, 512-18, 542-46 (1995).

intercourse with her despite her verbal protests and physical resistance. (R. 208)  She further stated that appellant stopped after a minute, and she attempted to leave the room.  Appellant prevented her, but she ultimately succeeded in leaving. (R. 209)

Appellant did not testify in this case, but evidence of his out-of-court statements was admitted which asserted that he engaged in sexual intercourse on a couch in Airman B's living room with the victim, who he discovered there half-naked after a night of heavy drinking.  He also asserted that she gave him physical encouragement (rubbed his neck) before the sexual intercourse and physical assistance during that sexual intercourse (reinserted his penis in her vagina). (R. 179) Finally, he stated that he later carried the apparently intoxicated woman into Airman B's bedroom and then went outside and smoked a cigar (R. 184), but he did not directly comment on the victim's allegation of rape in Airman B's bedroom.

Hearsay, as defined in the military rules of evidence, is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Mil. R. Evid. 801(c). However, it does not include admissions by a party-opponent (i.e., criminal defendant) offered against that party.  See Mil. R. Evid. 801(d)(2)(A).  Here, the Government first evidenced

certain oral admissions made by appellant on December 17, 1996, to Special Agent (SA) Phillips, i.e., that he engaged in sexual intercourse with the victim on the night in question; he had no verbal consent to do so; her eyes were closed until she told him to stop; and he knew that she previously engaged in heavy drinking.  SA Phillips' testimony was some evidence of an admission of guilt to rape by appellant.  See United States v. Grier, 53 MJ 30 (2000) (sexual intercourse with person incapacitated by alcohol may be considered rape).  As such, it was not hearsay (Mil. R. Evid. 801(d)), and therefore, arguably not subject to impeachment under Mil. R. Evid. 806.  But see note 1, supra.

Nevertheless, the defense adduced additional testimony from SA Phillips concerning appellant's statement on December 17, 1996. (R. 182-86)  He testified on cross-examination that appellant disclosed other details about this incident, i.e., appellant said before engaging in sexual intercourse that he kissed the alleged victim for a period of time, and she rubbed his neck.  The defense also adduced testimony that appellant said he forthrightly confronted the confused complainant outside the apartment after the incident and asked her if she recalled engaging in sexual intercourse with him, and that she physically assisted during the sexual act. (R. 187)

In my view, the defense was affirmatively using the evidence of appellant's out-of-court statements to SA Phillips for the truth of the matters asserted in those statements.  See Mil. R. Evid. 801(c).  The military judge reached the same conclusion. (R. 304)  Defense counsel also expressly made this point in his closing argument:

> The bottom line as you look at the evidence in a number of different ways, and the Government says that this is the road that you've got to follow, this is what all the evidence shows, there's another road, and perhaps a road a little bit less traveled, that goes off of that, and that's a road you've got to go down to look at all the evidence and say, "Well, we've got some doubts here."  Go down that road with all those doubts.  Because the bottom line, members, is what happened that evening, yes, was unfortunate.  It was very unfortunate.  And you have a case here where you have two people realistically who really believe what happened.  Airman Knox isn't up here lying to you .  She's telling you things as best as she can remember, as best as she can piece them together.  But Airman Goldwire, and his statements to Airman Phillips, to the OSI, likewise is telling you he thought he had consent, and for this 19-year-old airman it was reasonable.  Thank you.

(R. 387)(emphasis added).


In view of appellant's affirmative use of the out-of-court statement for hearsay purposes, I conclude impeachment by evidence of his poor character for trustworthiness was admissible

5

under Mil. R. Evid. 806.  See United States v. Bovain, 708 F.2d 606, 613 (11th Cir. 1983); see generally Cordray, note 2, supra at 543-46, 553.

In closing, I must note my disagreement with the majority's discussion and use of Mil. R. Evid. 106 and the common law doctrine of completeness to decide this case.  Mil. R. Evid. 106 extends only to a "writing or recorded statement," whereas appellant's case concerns a verbal statement.  Moreover, Mil. R. Evid. 101(b)(2) provides that "[i]f not otherwise prescribed in [the] Manual," the rules of evidence at common law may be applicable.  As noted below, a particular military rule of evidence covers appellant's case.

Admittedly, appellant did argue to the military judge that he was entitled to question SA Phillips on the remaining portions of his December statement to avoid misleading the members that it only contained admissions helpful to the Government. (R. 186) However, he used this evidence to exculpate himself based on the truth of the facts asserted in those portions of the statement. It is the use of these statements for this purpose which exceeds the scope of the common law doctrine of completeness.  See United States v. Collicott, 92 F.3d 973, 982-83 (9th Cir. 1996) (remaining exculpatory portions of statement containing admissions previously evidenced by Government are inadmissible

hearsay, even if permitted under Fed. R. Evid. 106); see generally 7 Wigmore, Evidence § 2113 at 659-60 (Chadbourn rev. 1978).

I believe Mil. R. Evid. 304(h)(2) is the applicable rule for those portions of his statement used to exculpate himself, not Mil. R. Evid. 106 or the common law rule of completeness. It broadly states: "Completeness. If only part of an alleged admission or confession is introduced against the accused, the defense, by cross-examination or otherwise, may introduce the remaining portions of the statement." It does not have the limitations of the common law rule of completeness. See Wigmore, supra, and United States v. Velasco, 953 F.2d 1467, 1476 n.9 (7th Cir. 1992) (evidence of remaining portion of statement not per se admissible under Fed. R. Evid. 106 unless relevant and necessary to explain portions of statement previously admitted).

I would hold that admission of appellant's statements under Mil. R. Evid. 304(h)(2) permits the introduction of impeaching evidence under Mil. R. Evid. 806. These statements were subsequently used by the defense for the truth of the matter asserted in them so as to exculpate appellant. Accordingly, they were hearsay, and their impeachment was authorized by Mil. R. Evid. 806. See Cordray, note 2, supra at 516-17; see also United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000).

7

United States v. Goldwire, No. 00-0349/AF

BAKER, Judge (concurring in the result):

While I concur in the result reached by the majority, I write separately because I believe that reference to Mil.R.Evid. 106 and the common law doctrine of completeness is unnecessary for resolution of the issues in this case. The majority suggests that the trial defense counsel relied on the common law doctrine to elicit additional oral statements made by appellant to Special Agent Phillips. The majority opinion then discusses Rule 106 and its relationship to the common law doctrine of completeness. Rule 304 is a passing reference: "We need not decide this issue on the common law rule because Mil.R.Evid. 304(h)(2) provides…." __ MJ at (12). Mil.R.Evid. 304(h)(2) is the more relevant rule to military practice.

Rule 106 by its express terms is limited to writings and recorded statements. As the majority recognizes, the rule is adopted without change from its federal counterpart, so one can presume that the President intended to adopt the purpose and rationale of Fed.R.Evid. 106. The Advisory Committee's Note to Fed.R.Evid. 106 states, "For practical reasons, the rule is limited to writings and recorded statements and does not apply to conversations." 56 F.R.D. 183, 201 (emphasis added).

1

The language of Mil.R.Evid. 106 and Fed.R.Evid. 106 notwithstanding, the majority argues that a military judge can fit oral statements into Rule 106 by exercising the authority granted in Mil.R.Evid. 611 to control the mode and presentation of evidence. However, it is unnecessary to have a military judge fit this square peg into that round hole since Rule 304(h)(2), on its face, expressly allows completeness of oral statements. Unlike Mil.R.Evid. 106, there is no federal counterpart to Mil.R.Evid. 304(h)(2). Furthermore, long ago, the President recognized the need to provide counsel an opportunity to show the remainder of an accused's oral or written confession or admission when only part of it was introduced. See para. 140a, Manual for Courts-Martial, United States, 1951.

Over reliance on the common law doctrine carries with it some potential for confusion as well. Wigmore suggests there are certain limitations that pertain to use of the doctrine. A significant one is that "the remainder [of the statement] thus received merely aids in the construction of the utterance as a whole, and is not in itself testimony." 7 Wigmore, Evidence § 2113 at 659 (Chadbourne rev. 1978) (emphasis added). In other words, the common law doctrine did not contemplate substantive use of the statements used to complete the utterance. Wigmore goes on to state, "The

2

remainder of the utterance, regarded as an assertion of the facts contained in it, is merely a hearsay statement, and as such has no standing." Id. Mil.R.Evid. 304(h)(2), on the other hand, is specific to admissions and confessions, which are not hearsay and are introduced precisely for their substantive value.

In sum, the typical situation will be that encountered by the defense counsel in this case, where the remainder of an accused's oral admissions are at issue.  It is difficult to believe that counsel would have been contemplating the intricate intersection between Rule 106 and Wigmore's common law approach when counsel had a simple, explicit rule of evidence close at hand.

Finally, I join Judge Sullivan in his analysis of Mil.R.Evid. 806 and the conclusion reached.