United States, Appellee

v.

Jason A. HART, Airman First Class
U.S. Air Force, Appellant

No. 00-0416

Crim. App. No. 32881

United States Court of Appeals for the Armed Forces

Argued November 9, 2000

Decided September 19, 2001

Counsel

For Appellant:  Captain Kyle R. Jacobson (argued); Colonel
James R. Wise, Major Maria A. Fried, and Major Gilbert J.
Andia, Jr., USAFR (on brief); Lieutenant Colonel Timothy W.
Murphy.

For Appellee:  Captain Peter J. Camp (argued); Colonel
Anthony P. Dattilo and Lieutenant Colonel Ronald A. Rodgers
(on brief).

Military Judge:  John J. Powers

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

PER CURIAM:

Contrary to his pleas, appellant was convicted of two specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. A panel of officer members sitting as a general court-martial sentenced him to a bad-conduct discharge, 24 months' confinement, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged and the court below affirmed. We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY ALLOWING
> OPINION/REPUTATION TESTIMONY ABOUT APPELLANT'S
> CREDIBILITY WHEN APPELLANT NEVER TESTIFIED
> AND THE HEARSAY TESTIMONY USED TO JUSTIFY ITS
> ADMISSION WAS NOT OBJECTED TO BY THE GOVERNMENT,
> AND WAS COLLATERAL OR FOR LIMITED PURPOSES ONLY.

### FACTS

Before going on temporary duty from Kadena Air Base, Okinawa, Japan, to Saudi Arabia in September 1996, Senior Airman Davis gave appellant a special power of attorney to take care of his car. When Davis returned, he noticed several items were missing from his car. When he confronted appellant on several occasions about the missing items, he received different responses. Appellant contends that he had an agreement to buy the car; thus he could take items from the car. Davis testified that in a telephone

2

conversation, appellant told him that he had replaced the engine in Davis' car with a more powerful engine.

Likewise, in October 1996, Airman Cox departed Kadena Air Base on leave and left appellant with a power of attorney to take care of various personal items, including a video camera, and to sell his car. Instead of selling the car, appellant gave the car to Airman Price.

Airman Oda testified about being "offered" a video camera when defense counsel asked him: "[D]id you actually see the video camera?" Oda responded, "Yes Sir. I seen it after someone else bought it." Oda also testified that appellant said the camera "belonged to him." Based on these statements from appellant introduced by the defense, the prosecution on several occasions introduced opinion and reputation evidence as to appellant's untruthfulness. The defense had elicited the statements from Davis and Oda to show appellant's "mistaken belief" that appellant had permission to dispose of the property. Final Brief at 8.

In United States v. Goldwire, 55 MJ 139, 143 (2001), we recognized that Mil.R.Evid. 806, Manual for Courts-Martial, United States (1995 ed.), applies by its express terms to "Mil.R.Evid. 801(d)(2), (C), (D), or (E)." We also held that it applies to introduction of hearsay. Id. at 143 (maj. op) and 146 (Sullivan, J., concurring in the

result).  Once appellant's pretrial statement is admitted [for purposes of Mil.R.Evid. 806], appellant is treated as a testifying witness and the Government may properly introduce reputation and opinion evidence to impeach appellant's truthfulness.  United States v. Goldwire, supra.  Both the statements by Davis and Oda that directly or indirectly indicate appellant's ownership of the items alleged under the larceny specification were offered as state-of-mind evidence to establish the defense's theories of the case -- that appellant mistakenly believed he could dispose of the property as he wished.  Trial counsel argued that these statements were admitted under Mil.R.Evid. 803(3) and defense counsel did not dispute that statement. Its introduction under the state-of-mind exception formed the predicate for impeachment explicitly recognized in Mil.R.Evid. 806.  Moreover, even if the statements were not hearsay defense, the statements put the credibility of appellant's mistake-of-fact defense at issue.  Thus, we hold that once defense counsel's cross-examination sought to introduce appellant's exculpatory statements, it was appropriate to introduce character evidence as to appellant's untruthfulness.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in the result):

The granted issue in this case asks:

> WHETHER THE MILITARY JUDGE ERRED BY
> ALLOWING OPINION/REPUTATION TESTIMONY
> ABOUT APPELLANT'S CREDIBILITY WHEN
> APPELLANT NEVER TESTIFIED AND THE HEARSAY
> TESTIMONY USED TO JUSTIFY ITS ADMISSION
> WAS NOT OBJECTED TO BY THE GOVERNMENT, AND
> WAS COLLATERAL OR FOR LIMITED PURPOSES
> ONLY.

(Emphasis added.)  In my view, the majority has incorrectly characterized the out-of-court statements of appellant as admissible hearsay under Mil. R. Evid. 803(3).  Nevertheless, I agree with the result reached by the majority because the defense failed to limit use of this evidence at trial to a nonhearsay purpose (see Mil. R. Evid. 105) and, accordingly, impeachment of appellant was permitted under Mil.R.Evid. 806.  See United States v. Goldwire, 55 MJ 139, 146 (2001) (Sullivan, J. concurring in the result).

As a starting point, I note that the military judge's authority for admitting the challenged impeachment evidence was Mil. R. Evid. 806.  It states in pertinent part:

> When a hearsay statement, or a statement
> defined in Mil. R. Evid. 801(d)(2)(C),
> (D), or (E), has been admitted in
> evidence, the credibility of the declarant
> may be attacked, and if attacked may be
> supported, by any evidence which would be

> admissible for those purposes if declarant
> had testified as a witness. . . ..

(Emphasis added.)  If the testimony justifying admission of the impeachment evidence was "hearsay," as stated by the defense in the granted issue, appellant's argument must fail.  This is because the rule on its face authorizes admission of impeachment evidence as to an out-of-court declarant <u>when hearsay evidence is admitted</u>.  <u>See</u> <u>generally</u>, David Sonenshein, <u>Impeaching The Hearsay Declarant</u>, 74 Temple L. Rev. 163, 165 n.13, 167 (Spring 2001).

However, close examination of appellant's brief clearly indicates that he is arguing that the evidence purportedly justifying impeachment in this case under Mil. R. Evid. 806 was not hearsay, <u>i.e.</u>, not "offered to prove the truth of the matter asserted" in those statements."  Final brief at 4, 5.  The military judge at trial disagreed with the defense on this point and ruled that this evidence was being used for hearsay purposes and permitted the Government to impeach the accused. (R. 180) Accordingly, the question before us is whether the military judge correctly ruled the out-of-court statements constituted hearsay under Mil. R. Evid. 801(c).

The majority, adopting trial counsel's argument, asserts that the out-of-court statements of appellant were offered to show his

state of mind and hence were admissible hearsay under Mil. R.

Evid. 803(3). (R. 179)  I note, however, Mil. R. Evid. 803

states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (3) Then existing mental, emotional, or physical condition.  A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

(Emphasis added.)  Although I agree that some of the out-of-court

declarations in this case were state-of-mind evidence, they were

not "statement[s] of the declarant's then existing state of mind"

under Mil. R. Evid. 803(3).  None of the out-of-court statements

constituted a direct assertion as to appellant's state of mind as

required by this exception to this rule.


     The late Justice Mosk of the California Supreme Court has

commented on the type of error made by the majority in

characterizing appellant's out-of-court statements as admissible

hearsay under Mil. R. Evid. 803(3).  See People v. Green, 609

P.2d 468, 480-81 (Cal. 1980).  He pointed out in a footnote

(n.9):

> When offered for such purpose the statement was simply not hearsay.  (Evid. Code § 1200; People v. Duran (1976) 16 Cal.3d 282,295, 127 Cal.Rptr. 618, 545 P.2d 1322.)  Both parties make the common mistake of treating this statement as an item of hearsay that is saved by an exception to the hearsay rule for statements of a declarant's then-existing "state of mind." (Evid. Code § 1250.)  Yet the writers have long pointed out the distinction between (1) using an out-of-court declarant's assertion of his state of mind (e.g., A testifies that he heard the declarant B say, "I am afraid of C") to prove that mental state directly, and (2) using his assertion of other facts (e.g., A testifies that he heard B say, "C threatened to kill me") to prove the same mental state indirectly.  The first is hearsay because it is used testimonially, i.e., it is offered for the purpose of inducing the trier of fact to believe in the truth of the assertion itself, just as if the declarant had so testified on the witness stand.  The second is not hearsay because it is used circumstantially, i.e., it is offered as evidence of conduct on the part of the declarant (B reported that C threatened to kill him) from which the trier of fact is asked to draw an inference as to the declarant's state of mind at the time (B fears C).  (See, e.g., 6 Wigmore, Evidence (Chadbourn rev. ed. 1976) §§ 1715, 1790; Assem. Com. on Judiciary, com. foll. Evid. Code, § 1250, 2d par.; Jefferson, Cal. Evidence Benchbook (1972) § 14.1, p. 168, caveat; Witkin, Cal. Evidence (1966) §§ 466-467, 556.))  For present purposes, however, the failure to observe this distinction is immaterial.

(Some emphasis added.)

Defense counsel in this case clearly did not agree that the evidence he had previously introduced was admissible hearsay under Mil. R. Evid. 803(3). (R. 177-78) On the contrary, he stated that three of the out-of-court statements of appellant were offered to show the state of mind of the person to whom appellant's statements were made or to contradict a witness testifying that these statements were not made. (R. 177-78) (see appendix) He also stated concerning the fourth statement:

> With regard to the camcorder, the question
> was asked, yes "Did he tell you?" "He said
> it was his?" That goes to, again, yes,
> that goes to Airman Hart's state of mind
> as to what he was thinking on his own.

(R. 178) This is quite similar to the nonhearsay situation which Justice Mosk spoke of in People v. Green, supra, where the out-of-court statement is used inferentially, not as directly asserting a state of mind.

Nevertheless, I concur in the result reached by the majority in this case. The key factual issue was whether appellant had agreements with his fellow servicemembers to dispose of their property as if it were his. Appellant elicited evidence of his out-of-court statements which, if believed, would tend to show appellant had such agreements. Moreover, he did not request that this evidence be used for a non-hearsay purpose alone at the time

5

of admission of these statements.  See Mil. R. Evid. 105.  Also, when he later made his Mil. R. Evid. 806 objection, he made no requests for limiting instructions concerning his asserted limited purpose in introducing this evidence. (R. 132-34, 177-80).  Accordingly, I would resolve this case against appellant because of his failure to limit use of this evidence to its non-hearsay uses ((see United States v. Burton, 937 F.2d 324, 327-28 (7th Cir. 1991) (Government's failure to limit its evidence to non-hearsay use permitted impeachment by defense under Fed. R. Evid. 806)) and his later use of these statements for hearsay purposes. (R. 255)  See United States v. Goldwire, supra (Sullivan, J., concurring in the result).  See generally Sonenshein, supra at 167.

**APPENDIX**

DC:   Thank you, Your Honor.  I'll just start off by addressing the particular statements that the prosecution has brought up.  The first, with regard to the engine, Your Honor, it's, again, the main point there for asking the question was not so much as to whether Airman Hart actually changed out the engine in the automobile as it was to say that, yes, he made that statement in and of itself to Airman Davis, and Airman Davis knew, at the time, that that was beyond the scope of the power of attorney.

What we're concerned about there is Airman Davis' reaction, not whether the engine was, in fact, actually changed out.  It's his reaction that Airman Hart, acting beyond the scope of the power of attorney, is what's important, and that's what made that question relevant.

With regard to Airman Hart's offer to pay for the items and such, that was, as I recall, the testimony that was specifically the point of trying to impeach Airman Davis.  As I recall Airman Davis' testimony— (Conferred with CDC.).  As I recall, Your Honor, his testimony was basically he was selling some of the items that Airman Hart had put into the car and that Airman Hart had not said anything along the lines of "Please keep, please hold onto this; please don't sell it until we make some sort of an arrangement."  That's why I wanted to introduce that particular statement from Airman Davis' testimony at the Article 32 hearing that Airman Hart had, in fact, said that.

With regard to the allotment, again, that was specifically trying to bring out the point that Airman Hart had called him up and said, "Hey, let's meet."  Basically, whether or not it was to consider an allotment, whether or not it was for something else doesn't really matter so much as the fact that Airman Hart tried to get Airman Davis to meet so that they could somehow come to terms on this matter. Airman Davis said, "No, I don't have the time to do

7

that," and he then went on though to have the time to file a report at the Law Enforcement Desk. Again, trying to go to Airman Davis' credibility. Whether or not he intended, that is Airman Davis, intended to allow an allotment is not the only thing that makes that question relevant.

With regard to the camcorder, the question was asked, yes, "Did he tell you?" "He said it was his." That goes to, again, yes, that goes to Airman Hart's state of mind as to what he was taking on his own.