SULLIVAN, Judge
(concurring in the result):
The granted issue in this case asks:
WHETHER THE MILITARY JUDGE ERRED BY ALLOWING OPINION/REPUTATION TESTIMONY ABOUT APPELLANT’S CREDIBILITY WHEN APPELLANT NEVER TESTIFIED AND THE HEARSAY TESTIMONY USED TO JUSTIFY ITS ADMISSION WAS NOT OBJECTED TO BY THE GOVERNMENT, AND WAS COLLATERAL OR FOR LIMITED PURPOSES ONLY.
(Emphasis added.) In my view, the majority has incorrectly characterized the ouVof-court statements of appellant as admissible hearsay under Mil.R.Evid. 803(3). Nevertheless, I agree with the result reached by the majority because the defense failed to limit use of this evidence at trial to a nonhearsay purpose (see Mil.R.Evid. 105) and, accordingly, impeachment of appellant was permitted under Mil.R.Evid. 806. See United States v. Goldwire, 55 MJ 139, 146 (2001) (Sullivan, J. concurring in the result).
As a starting point, I note that the military judge’s authority for admitting the challenged impeachment evidence was Mil. R.Evid. 806. It states in pertinent part:
When a hearsay statement, or a statement defined in Mil.R.Evid. 801(d)(2)(C), (D), or (E), has been admitted in evidence, *397 the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.....
(Emphasis added.) If the testimony justifying admission of the impeachment evidence was “hearsay,” as stated by the defense in the granted issue, appellant’s argument must fail. This is because the rule on its face authorizes admission of impeachment evidence as to an out-of-court declarant when hearsay evidence is admitted. See generally, David Sonenshein, Impeaching The Hearsay Declarant, 74 Temple L.Rev. 163, 165 n. 13,167 (Spring 2001).
However, close examination of appellant’s brief clearly indicates that he is arguing that the evidence purportedly justifying impeachment in this case under Mil.R.Evid. 806 was not hearsay, i.e., not “offered to prove the truth of the matter asserted” in those statements. Final brief at 4, 5. The military judge at trial disagreed with the defense on this point and ruled that this evidence wás being used for hearsay purposes and permitted the Government to impeach the accused. (R. 180) Accordingly, the question before us is whether the military judge correctly ruled the out-of-court statements constituted hearsay under Mil.R.Evid. 801(c).
The majority, adopting tidal counsel’s argument, asserts that the out-of-court statements of appellant were offered to show his state of mind and hence were admissible hearsay under Mil.R.Evid. 803(3). (R. 179) I note, however, Mil.R.Evid. 803 states:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * ❖
(3) Then existing mental, emotional, or physical condition. A statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant’s will.
(Emphasis added.) Although I agree that some of the out-of-court declarations in this case were state-of-mind evidence, they were not “statement^] of the declarant’s then existing state of mind” under Mil.R.Evid. 803(3). None of the out-of-court statements constituted a direct assertion as to appellant’s state of mind as required by this exception to this rule.
The late Justice Mosk of the California Supreme Court has commented on the type of error made by the majority in characterizing appellant’s out-of-court statements as admissible hearsay under Mil.R.Evid. 803(3). See People v. Green, 27 Cal.3d 1, 164 Cal. Rptr. 1, 609 P.2d 468, 480-81 (1980). He pointed out in a footnote (n.9):
When offered for such purpose the statement was simply not hearsay. (Evid.Code § 1200; People v. Duran (1976) 16 Cal.3d 282, 295, 127 Cal.Rptr. 618, 545 P.2d 1322.) Both parties make the common mistake of treating this statement as an item of hearsay that is saved by an exception to the hearsay rule for statements of a declarant’s then-existing “state of mind.” (Evid. Code § 1250.) Yet the writers have long pointed out the distinction between (1) using an out-of-court declarant’s assertion of his state of mind (e.g., A testifies that he heard the declarant B say, “I am afraid of C”) to prove that mental state directly, and (2) using his assertion of other facts (e.g., A testifies that he heard B say, “C threatened to kill me”) to prove the same mental state indirectly. The first is hearsay because it is used testimonially, i.e., it is offered for the purpose of inducing the trier of fact to believe in the truth of the assertion itself, just as if the declarant had so testified on the witness stand. The second is not hearsay because it is used circumstantially, i.e., it is offered as evidence of conduct on the. part of the declarant (B reported that C threatened to kill him) from which the trier of fact is asked to draw an inference as to the declarant’s state of mind at the time (B fears C). (See, e.g., 6 Wigmore, Evidence (Chadbourn rev. ed.1976) §§ 1715, 1790; Assem. *398 Com. on Judiciary, com. foil. Evid.Code, § 1250, 2d par.; Jefferson, Cal. Evidence Benchbook (1972) § 14.1, p. 168, caveat; Witkin, Cal. Evidence (1966) §§ 466-467, 556.) For present purposes, however, the failure to observe this distinction is immaterial.
(Some emphasis added.)
Defense counsel in this case clearly did not agree that the evidence he had previously introduced was admissible hearsay under Mil.R.Evid. 803(3). (R. 177-78) On the contrary, he stated that three of the out-of-court statements of appellant were offered to show the state of mind of the person to whom appellant’s statements were made or to contradict a witness testifying that these statements were not made. (R. 177-78) (see appendix) He also stated concerning the fourth statement:
With regard to the camcorder, the question was asked, yes “Did he tell you?” “He said it was his?” That goes to, again, yes, that goes to Airman Hart’s state of mind as to what he was thinking on his own.
(R. 178) This is quite similar to the nonhear-say situation which Justice Mosk spoke of in People v. Green, supra, where the out-of-court statement is used inferentially, not as directly asserting a state of mind.
Nevertheless, I concur in the result reached by the majority in this case. The key factual issue was whether appellant had agreements with his fellow servicemembers to dispose of their property as if it were his. Appellant elicited evidence of his out-of-court statements which, if believed, would tend to show appellant had such agreements. Moreover, he did not request that this evidence be used for a non-hearsay purpose alone at the time of admission of these statements. See Mil.R.Evid. 105. Also, when he later made his Mil.R.Evid. 806 objection, he made no requests for limiting instructions concerning his asserted limited purpose in introducing this evidence. (R. 132-34, 177-80). Accordingly, I would resolve this case against appellant because of his failure to limit use of this evidence to its non-hearsay uses ((see United States v. Burton, 937 F.2d 324, 327-28 (7th Cir.1991) (Government’s failure to limit its evidence to non-hearsay use permitted impeachment by defense under Fed.R.Evid. 806))) and his later use of these statements for hearsay purposes. (R. 255) See United States v. Goldwire, supra (Sullivan, J., concurring in the result). See generally Sonen-shein, supra at 167.

APPENDIX

DC: Thank you, Your Honor. I’ll just start off by addressing the particular statements that the prosecution has brought up. The first, with regard to the engine, Your Honor, it’s, again, the main point there for asking the question was not so much as to whether Airman Hart actually changed out the engine in the automobile as it was to say that, yes, he made that statement in and of itself to Airman Davis, and Airman Davis knew, at the time, that that was beyond the scope of the power of attorney.
What we’re concerned about there is Airman Davis’ reaction, not whether the engine was, in fact, actually changed out. It’s his reaction that Airman Hart, acting beyond the scope of the power of attorney, is what’s important, and that’s what made that question relevant.
With regard to Airman Hart’s offer to pay for the items and such, that was, as I recall, the testimony that was specifically the point of trying to impeach Airman Davis. As I recall Airman Davis’ testimony — (Conferred with CDC.). As I recall, Your Honor, his testimony was basically he was selling some of the items that Airman Hart had put into the car and that Airman Hart had not said anything along the lines of “Please keep, please hold onto this; please don’t sell it until we make some sort of an arrangement.” That’s why I wanted to introduce that particular statement from Airman Davis’ testimony at the Article 32 hearing that Airman Hart had, in fact, said that.
*399 APPENDIX — Continued
With regard to the allotment, again, that was specifically trying to bring out the point that Airman Hart had called him up and said, “Hey, let’s meet.” Basically, whether or not it was to consider an allotment, whether or not it was for something else doesn’t really matter so much as the fact that Airman Hart tried to get Airman Davis to meet so. that they could ■ somehow come to terms on this matter. Airman Davis said, “No, I don’t have the time to do that,” and he then went on though to have the time to file a report at the Law Enforcement Desk. Again, trying to go to Airman Davis’ credibility. Whether or not he intended, that is Airman Davis, intended to allow an allotment is not the only thing that makes that question relevant.
With regard to the camcorder, the question was asked, yes, “Did he tell you?” “He said it was his.” That goes to, again, yes, that goes to Airman Hart’s state of mind as to what he was taking on his own.