# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39146**

———————————

**UNITED STATES**
*Appellee*

**v.**

**William D. MASKE**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 22 March 2018

———————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Dishonorable discharge, confinement for 3 years, forfeiture of all pay and allowances, and reduction to the grade of E-3. Sentence adjudged 20 May 2016 by GCM convened at Ramstein Air Base, Germany.

*For Appellant:* Major Patrick A. Clary, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Amanda L. K. Linares, USAF; Major Rebecca A. Magnone, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges*.

Judge DENNIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge MINK joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

DENNIS, Judge:

Contrary to his pleas, Appellant was convicted of one specification of attempt to commit a sexual act upon a minor and two specifications of attempt

to commit a lewd act upon a minor in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880. Appellant was acquitted of one specification of wrongful possession of child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 834. Officer and enlisted members sentenced Appellant to a dishonorable discharge, confinement for three years, total forfeiture of pay and allowances, and reduction to the grade of E-3. The convening authority approved the sentence as adjudged.

Appellant was the subject of an undercover operation during which he engaged in sexual conversation with a purported minor child. To facilitate their investigation of Appellant's suspected violation of Article 120b, UCMJ, law enforcement agents were granted authorization to search Appellant's electronic media. While executing the search, agents discovered an image that appeared to be child pornography and, without authority, expanded their search to cover the offense of possession of child pornography. Both at trial and now on appeal, Appellant challenges the lawfulness of the search. Appellant also asserts that one of the Government's rebuttal witnesses lacked sufficient foundation to give an opinion of Appellant's character for truthfulness. Finding no error materially prejudicial to Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

Appellant, a self-pronounced connoisseur of online chat rooms, discovered a personal advertisement on Craigslist[1] entitled "Dependent Looking for Company." The ad read,

> Looking for a military man with common interest ;-) Adventurous, open minded, willing to try anything once ;-) I'm looking to share stories, experiences and more. If interested hit me up on Yahoo lets chat, swap pics, share some stories and take it from there. \\daddyluver3\\

Appellant responded to the ad using Yahoo! Messenger and began a conversation with an individual who soon identified herself as a 14-year-old dependent child named "Tina." Unbeknownst to Appellant, "Tina" was in fact an undercover agent with the Air Force Office of Special Investigations (AFOSI) and its liaison with the Internet Crimes Against Children Task Force.

Appellant's communications to "Tina" continued intermittently over a period of two months and included a variety of sexual language and pictures. During this period, Appellant shared with "Tina"—in graphic detail—his thoughts about what her "young" genitals would look and feel like, his desire

---

[1] Craigslist is a website that hosts classified advertisements and discussion forums.

to perform oral sex on her and make her orgasm, and the sexual gratification he received from thoughts of her. Appellant also sent "Tina" photographs of himself, which included a nude photograph of his erect penis.

The two eventually arranged for Appellant to meet "Tina" at her purported on-base home. Appellant arrived as planned, knocked on the door, and was immediately apprehended by law enforcement.

## II. DISCUSSION

### A. Search of Appellant's Electronic Media

Appellant asserts that AFOSI agents violated his rights under the Fourth Amendment of the Constitution[2] when they searched his electronic media during their investigation. Appellant's claim gives rise to two separate questions: (1) Was the search authorization overly broad? (2) Did the military judge err in failing to suppress the evidence obtained from the search? We answer both questions in the negative.

#### 1. Additional Facts

On 3 December 2014, the date of Appellant's planned encounter with "Tina," AFOSI agents sought four separate authorizations to search and seize electronic media from Appellant's person, residence, vehicle, and workspace, respectively. The affidavit seeking these authorizations outlined Appellant's involvement in the undercover operation, including the fact that Appellant had communicated with "Tina" through email and online chats. The affidavit also indicated that Appellant had sent pictures of himself.

The military magistrate ultimately granted search authorization for the ostensible purpose of investigating the sexual abuse of a child in violation of Article 120b, UCMJ, 10 U.S.C. § 920b. Each authorization permitted law enforcement to seize electronic communications and media storage devices, including "mobile phones, computers, laptops, tablets, memory sticks, memory cards, digital cameras, etc." Specifically, AFOSI agents were looking for copies of the images "Tina" received from Appellant's profile to establish that Appellant sent the images. There was no mention of child pornography in the 3 December 2014 search authorizations or corresponding affidavit.

When the electronic media were seized, the lead AFOSI agent in Appellant's case asked a judge advocate in the base legal office whether AFOSI could also search the media for child pornography. After initially indicating the need

---

[2] U.S. CONST. amend. IV.

to research the issue, the legal office eventually affirmed that there was probable cause to search for child pornography. When the agent received the "go ahead" from the base legal office, he sent the electronic media to the Defense Criminal Forensic Laboratory (DCFL) for forensic data extraction (FDE).[3] As is customary, the agent also submitted a Forensic Service Request via DCFL Form 1, requesting, *inter alia*, that DCFL extract all internet history and all allocated and unallocated communications. The agent also asked DCFL to "[e]valuate any questionable images/videos for suspected child pornography." AFOSI did not seek an expanded search authorization prior to asking DCFL to evaluate the images for suspected child pornography.

Approximately three weeks after AFOSI submitted its forensic service request, DCFL contacted the listed agent and informed him that the alleged offense of child sexual abuse did not establish probable cause to search for child pornography. DCFL indicated that it would not conduct such a search without a written recommendation from the legal office. DCFL then completed the FDE and returned the extracted items to AFOSI on an external hard drive. It contained 435,163 image files and 1,353 movie files.

When AFOSI received the FDE from DCFL, the lead agent on Appellant's case began reviewing the files, one by one, when he discovered an image that appeared to be child pornography. The agent did not stop his search to seek an expanded search authorization, choosing instead to continue his search until his findings were complete. In the end, he discovered, magnified, and flagged 169 images of suspected child pornography as well as several other images of what appeared to be Appellant and another Airman engaged in adultery. On the final day of his search, the agent coordinated with a judge advocate in the base legal office, who reviewed the identified images and agreed that they appeared to depict child pornography.

Using the images of suspected child pornography he had discovered, the agent sought an additional search authorization. On 2 April 2015, he provided an affidavit indicating he had "observed numerous photographs contained on [Appellant's] media devices that appeared to be child pornography." The agent also verbally described to the military magistrate some of the images he viewed, though he did not provide the magistrate with any of the images. The magistrate concluded there was probable cause to believe Appellant possessed child pornography and granted AFOSI authorization to search the previously-seized electronic devices for child pornography.

---

[3] An FDE, in its simplest form, is the process by which DCFL extracts certain types of electronic files from various devices and consolidates them onto an external hard drive. It is commonly referred to as a "data dump."

The agent forwarded to DCFL the new search authorization along with 24 images he and the judge advocate had identified for "deep dive" analysis. Five of these images became the basis of a charge against Appellant. Several other images were introduced by the Government during trial to establish that Appellant's possession of child pornography was not due to mistake or accident and to rebut the Defense claim of entrapment.

Trial defense counsel moved to suppress evidence related to the search and seizure of electronic media and any derivative evidence pursuant to Military Rule of Evidence 311 and the Fourth Amendment. After an extensive hearing, the military judge found a violation of Appellant's Fourth Amendment rights, concluding that,

> [The agent] went well beyond the scope of the [3 December 2014] Search Authorizations, and the Court finds that he engaged in a general search of the electronic media in that he sought out, magnified, and tagged images related to suspicions of adultery and similarly magnified and tagged images of suspected child pornography. . . . The Court is also concerned by the fact that [the agent] failed to recognize the need to stop and seek additional search authorization when he first encountered evidence of another crime. . . . [H]is determination to continue his examination without seeking an expanded search authorization was objectively unreasonable.

The military judge then addressed the agent's reliance on the "169 images of suspected child pornography as the basis for establishing probable cause" to obtain the additional search authorization. He found "that the Government ha[d] met its burden of showing that exclusion of the suspected child pornography evidence is not warranted in this case based on the Plain View and Inevitable Discovery exceptions."

Appellant was eventually charged with wrongful possession of child pornography for 5 of the 169 images. Over Defense objection, several other uncharged images were included in a prosecution exhibit used to rebut Appellant's contention that the child sexual abuse offenses were the result of entrapment by AFOSI.

### 2. Law and Analysis

#### *a. Was the search authorization overly broad?*

We begin our analysis with a de novo review of whether the search authorization was overly broad, resulting in a general search prohibited by the Fourth Amendment. *United States v. Maxwell*, 45 M.J. 406, 420 (C.A.A.F. 1996).

The Fourth Amendment to the Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

Appellant alleges that this last requirement, particularity, was absent from the 3 December 2014 search authorizations. Specifically, Appellant argues that, at the time the search authorizations were granted, AFOSI already knew which communications, images, and date range they were looking for, and the magistrate should have tailored the authorizations accordingly. Instead, Appellant argues, "the authorization in this case was a dragnet for all digital evidence."

Appellant correctly points out that because this was an undercover operation, AFOSI was generally aware of how Appellant had committed the alleged offense of attempted child sexual abuse before they obtained the search authorizations. The undercover agent who played the role of "Tina" had possession of the images Appellant was suspected of sending. AFOSI was also aware of each message exchanged during the two-month operation. We cannot conclude that this knowledge alone should have resulted in more narrowly-tailored search authorizations. Instead, we look to reasonableness, "the ultimate touchstone of the Fourth Amendment." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

The question of reasonableness in the context of a search for electronic media was recently addressed in *United States v. Richards*, 76 M.J. 365 (C.A.A.F. 2017). In *Richards*, the United States Court of Appeals for the Armed Forces (CAAF) upheld an authorization to search electronic media rather than narrowing it to cover a certain time period or to cover only devices that could be used for online communications. The court catalogued a series of federal circuit cases supporting "the notion of achieving a balance by not overly restricting the ability to search electronic devices." *Id*. at 369. It added,

> In charting how to apply the Fourth Amendment to searches of electronic devices, we glean from our reading of the case law a zone in which such searches are expansive enough to allow investigators access to places where incriminating materials may be hidden, yet not so broad that they become the sort of free-for-all general searches the Fourth Amendment was designed to prevent.

*Id.* at 370. Reasonableness lies within the zone outlined by the CAAF—one in which searches are expansive enough to allow investigators access to incriminating materials, yet not so broad where any search becomes a general search. We find that the 3 December 2014 search authorizations lie within that zone.

The 3 December 2014 search authorizations identified the specific types of devices on or by which electronic media could be stored or communicated as well as the crime being investigated. They also specified, with an accompanying affidavit, the means by which Appellant was alleged to have committed the crime being investigated, including digital images and communications. To be sure, the authorization could have been more specific in this case. After all, AFOSI provided extensive detail about its investigation in its affidavit, so the magistrate was aware of the nature of Appellant's alleged crime before granting search authorization. Notwithstanding the imperfections, "the authorization and accompanying affidavit did not give authorities carte blanche to search in areas clearly outside the scope of the crime being investigated." *Id.* Greater specificity beyond those included in the 3 December 2014 search authorizations and accompanying affidavit was not required to satisfy the particularity requirement of the Fourth Amendment.

### b. Did the military judge err in failing to suppress the evidence obtained from the search?

We now turn to whether the military judge erred in failing to suppress the evidence after he found Appellant's Fourth Amendment rights had been violated. We review a military judge's ruling on a motion to suppress for an abuse of discretion, viewing the evidence in the light most favorable to the party prevailing below. *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015) (internal quotation marks and citations omitted). More specifically, we review the military judge's findings of fact for clear error and his conclusions of law de novo. *Id.*

Searches conducted pursuant either to a warrant or to authorization based on probable cause are presumed reasonable. *United States v. Hoffmann*, 75 M.J. 120, 123–24 (C.A.A.F. 2016) (internal quotation marks and citations omitted). Warrantless searches, on the other hand, are presumptively unreasonable unless they fall within a specifically established and well delineated exception. *Id.* Here, the military judge found that Appellant's Fourth Amendment rights were violated when the agent expanded the scope of his search without authority. Appellant argues that the exclusionary rule should apply.

The exclusionary rule is a judicially created remedy for evidence directly obtained through violation of the Fourth Amendment as well as evidence that is the indirect product or "fruit" of unlawful police activity. *United States v. Wicks*, 73 M.J. 93, 103 (C.A.A.F. 2014) (citing *Wong Sun v. United States*, 371

U.S. 471, 488 (1963)). "'[S]uppression is not an automatic consequence of a Fourth Amendment violation,' but turns on the applicability of specific exceptions as well as the gravity of government overreach and the deterrent effect of applying the rule." *Wicks*, 73 M.J. at 103 (alteration in original) (quoting *United States v. Herring*, 555 U.S. 135, 137 (2009)).

The military judge found that the plain view and inevitable discovery exceptions applied in Appellant's case. In his ruling on the application of the plain view doctrine, the military judge properly found that the agent was executing a valid search when he first discovered an image he believed to be child pornography. The judge concluded that "the agent would have had the authority to seize that image . . . then be able to properly present a description or the actual image to the Magistrate for a timely expansion of the Search Authorization." We agree. As to the application of the inevitable discovery exception, the military judge was "satisfied that the Magistrate would have granted the expanded Search Authorization" based on the image or description provided. Again, we agree.

Still, Appellant asserts that there was "one important conclusion overlooked by the military judge—AFOSI's search of the digital media was at all times an attempt to uncover evidence of child pornography and was not limited to the 'Tina' offenses." But Appellant's argument hinges on the conclusion that the 3 December 2014 search authorizations were invalid. As previously discussed, the search authorizations satisfied the requirements of the Fourth Amendment, leaving open the possibility of legally finding other evidence in plain view. Although Appellant focuses on what he believes were the agent's motivations in conducting the search, those motivations have little bearing on our analysis because "though inadvertence is a characteristic of most legitimate 'plain view' seizures, it is not a necessary condition." *Horton v. California,* 496 U.S. 128, 130 (1990).

Even assuming *arguendo* that the agent in Appellant's case was attempting to uncover evidence of child pornography, the agent's motives would not invalidate an otherwise valid exception to the Fourth Amendment's warrant requirement. Notably, the officer in *Horton* testified that "while he was searching for the [property authorized by the search warrant], he was also interested in finding other evidence" connecting Horton to the crime. *Id*. at 131. Yet, the United States Supreme Court found that as long as the officer's search was conducted pursuant to a valid warrant and the items were in plain view, the fact that discovery of the evidence was not inadvertent did not warrant its exclusion. *Id*.

As a final matter, the military judge also found that the agent's actions were not taken "with any intent to deprive the accused of his rights or with reckless disregard for the protections of the Fourth Amendment." He added,

"[t]his type of conduct, while far from acceptable, is not of a nature warranting the harsh remedy of exclusion." Having reviewed the entire record, including the information regarding how the searches were conducted in this case, we are likewise persuaded that exclusion of the evidence is not warranted in this case.[4]

**B. Opinion Testimony**

At trial, the Defense findings case-in-chief consisted of a sole witness, Appellant, who testified that he did not believe "Tina" was the 14-year-old dependent she claimed to be. Sharing his experiences of adopting various personas online, he testified that he believed "Tina" was actually an adult adopting the persona of an underage girl. When given the opportunity for rebuttal, the Government called, over Defense objection, MSgt PN, who testified to Appellant's character for untruthfulness. As he did at trial, Appellant maintains that MSgt PN lacked sufficient foundation to offer an opinion as to Appellant's character for untruthfulness.

We review a military judge's decision to admit opinion evidence for an abuse of discretion. *United States v. Goldwire*, 55 M.J. 139, 142 (C.A.A.F. 2001) (citing *United States v. Johnson*, 46 M.J. 8, 10 (C.A.A.F. 1997)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (internal quotation marks and citations omitted).

"Opinion-or-reputation-type evidence may only be introduced when a proper foundation has been laid." *United States v. Toro*, 37 M.J. 313, 317 (C.M.A. 1993). "To lay a proper foundation for opinion evidence, the proponent must show that the character witness personally knows the witness and is acquainted with the witness well enough to have had an opportunity to form an opinion of the witness' character for truthfulness." *Id.*

Here, the military judge held a hearing outside the presence of the members to assess the basis of MSgt PN's opinion. During the hearing, MSgt PN, who had once served as Appellant's acting first sergeant, identified two specific

---

[4] We note that evidence in the record raises the issue of whether Appellant consented to the search at issue. Under direct examination during the Defense findings case-in-chief, Appellant testified that when questioned on 3 December 2014, he "had nothing to hide" and "gave [AFOSI] free access to everything." When asked for clarification on cross-examination, Appellant confirmed that he gave AFOSI consent to search his house and vehicle. There is no record of his consent in the Report of Investigation nor any mention of it in the extensive suppression hearing. The Government also does not raise consent in its answer to Appellant's Assignment of Errors. We therefore decline to address it in our analysis.

instances forming his opinion of Appellant. In the first instance, Appellant lied to MSgt PN about the nature of Appellant's relationship with a co-worker who was not his wife. Appellant acknowledged the lie when confronted with evidence. In the second instance, MSgt PN learned Appellant had been in a subordinate's dorm room with his battle uniform blouse off. MSgt PN clarified that the second instance informed his opinion about whether Appellant was a good noncommissioned officer and did not inform his opinion about Appellant's character for untruthfulness.

Citing *Goldwire*, among other cases, Appellant argues that MSgt PN's limited interaction with Appellant and the single lie Appellant allegedly told MSgt PN did not provide an adequate foundation to form the basis for an opinion of Appellant's character for truthfulness. 55 M.J. at 144. Notably, these facts were both addressed by the military judge in ruling on Appellant's objection. The military judge acknowledged that "[t]he unique nature of military society does not justify a finding that a single lie would constitute an adequate basis for opinion testimony regarding a witness's character for truthfulness." *Id.* But like the CAAF did in *Goldwire*, the judge found that the nature of MSgt PN's relationship with Appellant while serving as his acting first sergeant was sufficient to justify one lie serving as the basis for MSgt PN's opinion.

As to Appellant's assertions that there were limited interactions between MSgt PN and Appellant, the military judge considered MSgt PN's having served as Appellant's acting first sergeant, MSgt PN's approximately 12 interactions with Appellant during the one to two weeks Appellant was being investigated for having an unprofessional relationship, and the fact that Appellant "was less than forthcoming" during his interaction with MSgt PN. Careful consideration of these facts led the military judge to find a sufficient foundation for MSgt PN's testimony. The military judge's decision to admit the evidence was neither arbitrary, fanciful, clearly unreasonable, nor erroneous. Thus, we find no abuse of discretion.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court